**NO. 16-2007 (L)**

---

**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

---

**PABLO GONZALEZ-AVILES, et al.**

**Plaintiffs/Appellants/Cross-Appellees**

**v.**

**ALEXANDER ACOSTA, et al.**

**Government Defendants/ Employer-Defendants/ Appellees/Cross-Appellants**

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(HON. J. FREDERICK MOTZ, DISTRICT JUDGE)

---

# BRIEF OF CONSOLIDATED EMPLOYER-APPELLEES

R. Wayne Pierce
133 Defense Highway, Suite 201
Annapolis, Maryland 21401
410-573-9955

Wendel V. Hall
1200 G Street, N.W., Suite 800
Washington, DC 20005
202-661-2173

*Attorneys for 65 Employer-Defendants*

T.W. Anderson, Jr.
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida 33131
305-416-6880
*Attorney for Deggeller Attractions*

George E. Brown
One South Street, Suite 2600
Baltimore, Maryland 21202
410-752-6030
*Attorney for Toll Landscape, L.L.C.*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 16-2007 Caption: Gonzalez-Aviles v. Perez

Pursuant to FRAP 26.1 and Local Rule 26.1,

65 employers identified on attached paper
(name of party/amicus)

who is appellee, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: R Wayne Pierce Date: September 16, 2016

Counsel for: 65 employers

## CERTIFICATE OF SERVICE

**************************

I certify that on September 16, 2016 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

R Wayne Pierce
(signature)

September 16, 2016
(date)

**List of 65 Appellee Employer - Defendants**

A of R Services, Inc.,

A.R. Star Services, Inc.,

Akehurst Landscape Service, Inc.,

Alpha Landscape Contractors, Inc.,

Bob Jackson Landscapes, Inc.,

Cedar Ridge Landscape, Inc.,

Challenger Sports Corp.,

Clipper's Inc.,

Clipper's Inc.-NOVA,

Columbia Grounds Management Corp.,

Continental Landscaping, Inc.,

Creative Landscapes by Gregory, Inc.,

C.S. Lawn & Landscape, Inc.

Custom Ground Maintenance, Inc.,

Denison Landscaping, Inc.,

Easton Ice Company, Inc.,

Ed's Plant World, Inc.,

Excell Lawn Care Inc.,

Exec-U-Lawn Landscape Management, Inc.,

Facility Services Co., Inc.,

Fairplay Games, Inc.,

Frank Joseph & Sons, Inc.,

Gibson Landscapes Inc.,

Goshen Enterprises, Inc.,

Green Angels Landscaping LLC,

Grounds Management and Landscaping Inc.

Hartsoe Property Services, LLC,

HV, LLC

Hydro-Tech Irrigation Co.,

Inners Amusement Co.,

Ivy Hill Nursery Co., Inc.,

Kane Landscapes, Inc.,

KCS Landscape Management, Inc.,

Kelly-Miller Bros. Circus,

Kingsdene Nurseries, Inc.

Landcare USA LLC,

Landscape Development Co., Inc.,

Larson's Tree Service & Landscaping, Ltd.,

Lawns Unlimited, LLC,

Laytonsville Turf Farm, LLC,

Lee's Lawn Service,

Manor View Farm, Inc.,

Maryland Natives Nursery, Inc.,

Mead Tree & Turf Care, Inc.,

M.J.M. Lawn and Landscaping, Inc.,

Oak Hill Lawn Care & Landscaping, Inc.,

Outside Unlimited, Inc.,

P. Stadler and Sons Co.,

Paul Schwartz Landscaping, LLC,

PGC Landscape LLC,

Pinehurst Landscape Co., Inc.,

Poole Landscaping, Inc.,

Porter Landscaping, Inc.,

Quality One, Inc.,

South Forty, Inc.,

Sposato Landscape Co., Inc.,

Strates Fine Foods, Inc.,

Surrounds Inc.,

TDH Landscaping, LLC,

Terrace Turf Lawn Services, Inc.,

Wentworth Nursery, Inc.,

W.H. Boyer, Inc.

Whatever Enterprises, LLC,

William T. King, Inc., and

Woodfield Landscaping Inc.

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 16-2007 Caption: Pablo Gonzalez-Aviles, et al. v. Thomas E. Perez, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Toll Landscape, L.L.C. (Identified in the case as Toll Brothers, LLC-VA)
(name of party/amicus)

who is Appellee, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☑ YES ☐ NO
If yes, identify all parent corporations, including all generations of parent corporations:
Toll Landscape II, L.L.C., a Delaware limited liability company (Sole Member)
Toll Bros., Inc., a Pennsylvania corporation (Sole Member of Toll Landscape II, L.L.C.)
Toll Holdings, Inc., a Delaware corporation (Sole Stockholder of Toll Bros., Inc.)
Toll Brothers, Inc., a Delaware corporation (Sole Stockholder of Toll Holdings, Inc.)

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☑ YES ☐ NO
If yes, identify all such owners:
Toll Brothers, Inc. is a publicly-traded Delaware corporation.

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: [signature] Date: September 28, 2016

Counsel for: Toll Landscape, L.L.C.

**(Identified in the case as Toll Brothers, LLC-VA)**

## CERTIFICATE OF SERVICE

****************************

I certify that on September 28, 2016 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

See attached list.

[signature] September 28, 2016
(signature) (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 16-2007 Caption: Pablo Gonzaliez-Aviles v. Thomas E. Perez, et al

Pursuant to FRAP 26.1 and Local Rule 26.1,

Deggeller Attractions, Inc.
(name of party/amicus)

who is Appellee, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: ______________________________ Date: ________________

Counsel for: Deggeller Attractions, Inc.

## CERTIFICATE OF SERVICE

**************************

I certify that on September 20, 2016 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:
See attached list

______________________________ (signature)

________________ (date)

# TABLE OF CONTENTS


| | Page |
|---|---|
| Table of Authorities | xiii |
| Glossary of Abbreviations, Acronyms, and Terms | xvii |
| **Jurisdictional Statement** | 1 |
| **Statement of Issues** | 1 |
| **Statement of Related Cases** | 2 |
| **Statement of the Case** | 2 |
| **Statement of Facts and Proceedings Below** | 3 |
| A. Overview Of The H-2B Program Under The Defunct 2008 H-2B Final Rule | 3 |
| B. The H-2B Labor Certification Process Under The Now-Vacated 2008 H-2B Final Rule | 6 |
| C. DOL Retroactively Tries To Change H-2B Employers' Wage Obligations For The 2013 Season | 7 |
| D. Island Holdings, LLC Challenges Three SPWDs And Prevails | 12 |
| E. BALCA Rules In Island Holdings' Favor | 13 |
| F. DOL Administers Other SPWD Challenges Consistently With 20 C.F.R. §§ 655.10 and 655.11 | 14 |
| G. DOL Attempts To Reverse Island Holdings Through A Collusive Lawsuit In The Eastern District Of Pennsylvania And Is Rebuffed | 14 |
| H. DOL Proposes A "Declaratory Order" Deeming Itself The Winner Of Island Holdings | 15 |
| I. The United States District Court For The Northern District Of Florida Vacates And Permanently Enjoins DOL From Enforcing The 2008 H-2B Final Rule | 16 |
| J. Appellants File This Lawsuit, Which Was Correctly Dismissed For Lack Of Subject Matter Jurisdiction And Failure To State A Claim | 17 |
| **Summary of the Argument** | 21 |
| **Argument** | 24 |
| A. Standard of Review | 24 |
| B. The District Court Correctly Dismissed The Complaint For Lack Of Subject Matter Jurisdiction. | 25 |
| 1. The District Court Lacked Constitutional Subject | 25 |

Matter Jurisdiction Over The Complaint.
2. *Comite de Apoyo a Los Trabajadores Agricolas v. United States Dep't of Labor*, 995 F.2d 510 (4th Cir. 1993) Forbids The District Court From Issuing Employee-Appellants' Requested Advisory Opinion. 27
3. The District Court Lacks The Authority To Enter A Binding Judgment Against Employer-Appellees. 30
4. CATA Requires Dismissal 33
C. Employee-Appellants Lack Standing To Sue DOL Under Count I And Proposed Count V 34
D. The District Court Correctly Dismissed Count I Of The Complaint 38
E. The District Court Did Not Abuse Its Discretion In Denying Employee-Appellants' Motion For Leave To Amend. 40
**Conclusion** 42

# TABLE OF AUTHORITIES

## Cases

*Bayou Lawn & Landscape Servs. v. Oates*, 713 F.3d 1080 (11th Cir. 2013) ........ 16

*Bernard v. U. S. Lines, Inc.*, 475 F.2d 1134 (4th Cir. 1973) ........ 32

*Comite de Apoyo a los Trabajadores Agricolas v. Perez*, 46 F. Supp. 2d 550 (E.D. Pa.), *rev'd*, 774 F.3d 173 (3d Cir. 2014 ........ 15

*Comite de Apoyo a los Trabajadores Agricolas v. Solis*, 933 F. Supp. 2d 700 (E.D. Pa. 2013), *rev'd on other grounds*, 774 F.3d 173 (3d Cir. 2014) ........ 8

*Comité de Apoyo a los Trabajadores Agrícolas v. Solis*, No. 09-240, 2010 U.S. Dist. LEXIS 90155 (E.D. Pa. Aug. 30, 2010) ........ 7

*Comite de Apoyo a Los Trabajadores Agricolas v. United States Dep't of Labor*, 995 F.2d 510 (4th Cir. 1993) ........ 24, 27, 28, 42

*DaimlerChrysler Corp. v Cuno*, 547 U.S. 332 (2006) ........ 22, 31, 33, 34

*Davenport v. Int'l Bhd. of Teamsters*, 166 F.3d 356 (D.C. Cir. 1999) ........ 32

*EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 782 (9th Cir. 2005) ........ 31, 33

*Flast v. Cohen*, 392 U.S. 83 (1968 ........ 22, 27, 28

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000 ........ 23

*G.H. Daniels III & Assocs., Inc. v. Perez*, 2015 U.S. App. Lexis 15689 (10th Cir. Sept. 3, 2015 ........ 17

*Johnson v. Oroweat Foods Co.*, 785 F.2d 503 (4th Cir. 1986) ........ 41

*Kenrose Mfg. Co. v. Fred Whitaker Co.*, 512 F.2d 890 (4th Cir. 1972) ........ 32

*Louisiana Forestry Assn., Inc. v. Secretary of Labor*, 745 F.3d 653 (3d Cir. 2014 ........ 17

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ........ 30

*Norton v. S. Utah Wilderness All.*, 542 U.S. 55 (2004) ........ 40

*Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365 (1978) ........ 26

*Perez v. Perez*, 2015 U.S. Dist. LEXIS 27606 (N.D. Fla. Mar. 4, 2015) .. 16

*Roche v. Lincoln Prop. Co.*, 373 F.3d 610 (4th Cir. 2004) ........... 26

*United States ex rel. Ahumada v. NISH*, 756 F.3d 268 (4th Cir. 2014). ........ 21, 24, 41

*United States v. Johnson*, 319 U.S. 302 (1943) ........ 23

*Vieux Carre Prop. Owners, Residents & Assocs. v. Brown*, 875 F.2d 453 (5th Cir. 1989) ........ 33

**Statutes**

5 U.S.C. § 551 ........ 3, 18

5 U.S.C. § 706(1) ........ 40

8 U.S.C. § 1101(a)(15)(H)(ii)(b) ........ 4

8 U.S.C. § 1184 ........ 4

28 U.S.C. § 2201 ........ 1

**Other Authorities**

13 Wright & Miller, *Federal Practice and Procedure* § 3522, at 100 ..... 26

*C & C Consulting Engineers*, 2008-INA-00035 and 2008-INA-00036 (Aug. 6, 2009) ........ 8

Immigration and Nationality Act of 1952, Pub. L. No. 82-414, 66 Stat. 163 (June 27, 1952) .......... 4

Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3445 (Nov. 6, 1986) .......... 4

**Federal Rules**

Federal Rule of Civil Procedure 12(b)(1) .......... 18

Federal Rule of Civil Procedure 12(b)(6) .......... 18

Federal Rule of Civil Procedure 19 .......... *passim*

**Regulations**

8 C.F.R. § 214.2(h)(6) .......... 6

20 C.F.R. §§ 655.10 .......... 5, 14

20 C.F.R. § 655.10(a)(3) .......... 5, 6

20 C.F.R. § 655.10(b)(2) .......... 6

20 C.F.R. § 655.10(d) .......... 9

20 C.F.R. § 655.10(g) .......... 9

20 C.F.R. § 655.10(g)(1) .......... 10

20 C.F.R. § 655.10(g)(2) .......... 10, 14

20 C.F.R. § 655.10(g)(3) .......... 10, 11, 14

20 C.F.R. § 655.11 .......... 5, 10, 14

20 C.F.R. § 655.11(a) .......... 11

20 C.F.R. § 655.11(b) .......... 11, 14

20 C.F.R. § 655.11(d) .......... 11

20 C.F.R. §§ 11(e) .......... 11

20 C.F.R. § 655.33 .......... 5, 11, 36, 37

20 C.F.R. § 655.33(a) .......... 11

20 C.F.R. § 655.33(f) .......... 11

Employment and Training Administration, *Labor Certification Process and Enforcement for Temporary Employment in Occupations Other Than Agriculture or Registered Nursing in the United States (H-2B Workers), and Other Technical Changes, Part V*, Final Rule, 73 Fed. Reg. 78020 (Dec. 19, 2008) ("2008 H-2B Final Rule"); .......... 5

Employment and Training Administration, *Wage Methodology for the Temporary Non-agricultural Employment H-2B Program, Part VI*, Final Rule, Request for Comment, 76 Fed. Reg. 3452, 3466 (Jan. 19, 2011) ("2011 Wage Rule") .......... 6, 10, 36

*Wage Methodology for the Temporary Non-Agricultural Employment H-2B Program, Part 2, Interim Final Rule, Request For Comments*, 78 Fed. Reg. 24,047 (Apr. 24, 2013) ("2013 IFR") .......... 8

*Intent To Issue Declaratory Order*, 79 Fed. Reg. 75,179 (Dec. 17, 2014) 15

*Temporary Non-Agricultural Employment of H-2B Aliens in the United States*, 80 Fed. Reg. 24,042 (Apr. 29, 2015) (Interim Final Rule; Request for Comments) .......... 17

*Wage Methodology for the Temporary Non-Agricultural Employment H-2B Program,* 80 Fed. Reg. 24,146 (Apr. 29, 2015) (Final Rule) .......... 17

**Constitutional Provisions**

Article III, § 2 .......... 1, 26

# GLOSSARY OF ABBREVIATIONS, ACRONYMS, AND TERMS

## Abbreviations and Acronyms

| | | |
|---|---|---|
| AF | – | Appeal file |
| APA | – | Administrative Procedure Act of 1946 |
| BALCA | – | Board of Alien Labor Certification Appeals |
| CATA | – | Comité de Apoyo a los Trabajadores Agrícolas |
| *CATA* | – | *Comite de Apoyo a Los Trabajadores Agricolas v. United States Dep't of Labor*, 995 F.2d 510, 511 (4th Cir. 1993) |
| CO | – | Certifying Officer |
| DHS | – | Department of Homeland Security |
| DOL | – | Department of Labor |
| H-2B | – | 8 U.S.C. § 1101(a)(15)(H)(ii)(b) |
| IFR | – | Interim final rule |
| INA | – | Immigration and Nationality Act of 1952 |
| IRCA | – | Immigration Reform and Control Act of 1986 |
| NPC | – | National Prevailing Wage Center |
| NPWC | – | National Prevailing Wage Center |
| OFLC | – | Office of Foreign Labor Certification |
| PWD | – | Prevailing wage determination |
| SPWD | – | Supplemental prevailing wage determination |

## JURISDICTIONAL STATEMENT

The district court did not have subject matter jurisdiction over this matter. Employee-Appellants sought a prohibited advisory opinion and did so in the context of a "friendly," non-adversarial lawsuit. In addition, Employee-Appellants lacked standing to sue either the Department of Labor or Consolidated Employer-Appellees because they did not satisfy the inflexible constitutional *minima* for standing. Finally, Employee-Appellants did not satisfy the prerequisites for statutory jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

## STATEMENT OF ISSUES

1. Did the district court have subject matter jurisdiction under Article III, § 2 of the United States Constitution over Employee-Appellants' Complaint and over each party?

2. Did the district court correctly dismiss Count I of the Complaint for lack of an agency "action" that was "final?"

3. Did the district court correctly deny leave to amend the Complaint when the district court lacked subject matter jurisdiction and the amendment would not have cured those jurisdictional defects?

## STATEMENT OF RELATED CASES

The district court docket, J.A. 001, shows two related cases:

(1) *Aviles-Cervantes, et al. v. Outside Unlimited, Inc.*, No. 1:16-cv-01214-RDB (D. Md.). The Employee-Appellants in this case are also named plaintiffs in *Aviles-Cervantes*.[1]

(2) *Outdoor Amusement Business Association, Inc., et al., v. Department of Homeland Security, et al.*, No. 1:16-cv-01015-ELH (D. Md.).

## STATEMENT OF THE CASE

This case arises from the Department of Labor's *ultra vires* attempt to retroactively increase the wage rate that Employer-Defendants had to pay their H-2B visa workers during the 2013 season. Employee-Appellants are former H-2B employees of just one of the Employer-Defendants from that 2013 season.

After allowing nearly 3 years to pass, Employee-Appellants filed suit in November, 2015, against DOL and a large group of Maryland-

---

[1] The *Aviles-Cervantes* case seeks to enforce the SPWDs separately from this lawsuit. To the extent that the trial court suggested that the Employee-Appellants have standing to sue their personal employer, Outside Unlimited, J.A. 165, Employee-Appellants have done precisely that in *Aviles-Cervantes*. Thus, Employee-Appellants have already ensured that they have a remedy against Outside Unlimited if justified. However, this multiplicious litigation establishes the prejudice to individual employer Outside Unlimited, which is now defending redundant cases for the same conduct.

centric employers participating in the H-2B program in 2013. Although Employee-Appellants challenged a variety of DOL actions under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, they did not present a single cause of action directed specifically against Consolidated Employer-Appellants. Rather, they asked the district court to compel DOL to force Consolidated Employer-Appellees to pay hundreds of thousands of dollars in back pay to the class that they hoped to represent. J.A. at 51, Prayer for Relief, § (f) ("[d]eclaring that the wages required by the SPWDs . . . are lawfully required and . . . requiring that such wages be paid within 30 days of the Court's judgment.")

On June 17, 2016, the District Court granted each defendant's motion to dismiss on the merits. J.A. 164-166. The District Court entered a clarifying Order on August 19, 2016. J.A. 180. Employee-Appellants appealed on September 1, 2016.

## STATEMENT OF FACTS AND PROCEEDINGS BELOW

### A. Overview Of The H-2B Program Under The Defunct 2008 H-2B Final Rule.

The H-2B visa program is an effective and vital lifeline for small, non-agricultural businesses who face temporary labor shortages and

want to hire foreign nationals to deal with their immediate need for help. *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(b). Congress authorized a precursor to the H-2B Program in the Immigration and Nationality Act of 1952, Pub. L. No. 82-414, 66 Stat. 163 (June 27, 1952), *codified at* 8 U.S.C. § 1101(a)(15)(H)(ii). Congress created the modern H-2B program in the Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3445 (Nov. 6, 1986), *codified at* 8 U.S.C. §§ 1101(a)(15)(H)(ii)(b), 1184.

Congress assigned responsibility for administering the H-2B visa program first to the Attorney General and then to Department of Homeland Security ("DHS"). J.A. at 197. Congress required DHS to consult with other federal agencies when appropriate. DHS chose the Department of Labor ("DOL") as one such agency. Congress delegated legislative rulemaking authority over the H-2B Program exclusively to DHS.

In December 2008, DHS and DOL independently published regulations governing aspects of the H-2B Program. *See* Employment and Training Administration, *Labor Certification Process and Enforcement for Temporary Employment in Occupations Other Than*

*Agriculture or Registered Nursing in the United States (H-2B Workers), and Other Technical Changes, Part V*, Final Rule, 73 Fed. Reg. 78020 (Dec. 19, 2008) ("2008 H-2B Final Rule"); Department Of Homeland Security, Bureau of Citizenship and Immigration Services, *Changes to Requirements Affecting H-2B Nonimmigrants and Their Employers, Part VII*, Final Rule, 73 Fed. Reg. 78104 (Dec. 19, 2008) ("2008 DHS Final Rule"). DOL's regulation purported to impose numerous substantive obligations on prospective employers, including a requirement to pay a DOL-mandated prevailing wage. *See* 20 C.F.R. § 655.10(a)(3).[2]

DOL's regulation also established a set of procedures governing the administration of its H-2B activities. *See, e.g.,* 20 C.F.R. §§ 655.10, § 655.11, § 655.33. The regulations charged DOL's Board of Alien Labor Certification Appeals ("BALCA") with the overall responsibility for "judging the Department's compliance with its regulations." *See*

[2] The United States District Court for the Northern District of Florida vacated and enjoined further enforcement of DOL's 2008 H-2B Final Rule on March 4, 2015. Unless otherwise noted, citations to the DOL's H-2B regulations are to the now-vacated version extant immediately before the April 2015 revision.

Employment and Training Administration, *Wage Methodology for the Temporary Non-agricultural Employment H-2B Program, Part VI*, Final Rule, Request for Comment, 76 Fed. Reg. 3452, 3466 (Jan. 19, 2011) ("2011 Wage Rule").

### B. The H-2B Labor Certification Process Under The Now-Vacated 2008 H-2B Final Rule.

DHS' H-2B regulations require an employer seeking permission to hire H-2B workers to present a DOL "labor certification" to it. *See* 8 C.F.R. § 214.2(h)(6). A labor certification is an official determination that (1) the employer is facing a labor shortage and (2) employing an H-2B worker in the job opportunity will not have an adverse effect on similarly-employed domestic workers. DOL's 2008 H-2B Final Rule established this procedure, as well as the evidence needed, so that DOL could make the necessary determination. The 2008 H-2B Final Rule included a number of substantive mandates.

The most important of these substantive mandates was the requirement to pay the "prevailing wage." *See* 20 C.F.R. § 655.10(a)(3). DOL set the "prevailing wage" during the first phase of the application process using a generic regulatory formula. *See* 20 C.F.R. § 655.10(b)(2). A prospective H-2B employer would submit a Prevailing Wage Request

to DOL. DOL would then issue a Prevailing Wage Determination ("PWD"). The final PWD would then be used to advertise the job (*i.e.*, to obtain information about whether a labor shortage existed) and seek a labor certification from DOL during the second phase. After the recruitment period was over, the employer filed an Application for Temporary Employment Certification with DOL. DOL reviewed it and, if warranted, issued a labor certification.

### C. DOL Retroactively Tries To Change H-2B Employers' Wage Obligations For The 2013 Season.

The legality of DOL's 2008 H-2B Final Rule was challenged almost as soon as it became effective. *See, e.g.*, *Comité de Apoyo a los Trabajadores Agrícolas v. Solis*, No. 09-240, 2010 U.S. Dist. LEXIS 90155 (E.D. Pa. Aug. 30, 2010). These challenges included the claim that DOL's prevailing wage formula was procedurally defective under the Administrative Procedure Act. *Id.* Specifically, the allegation was that DOL had not complied with the APA's procedural requirements for notice and comment rulemaking. As a result of this litigation, the Eastern District of Pennsylvania ordered DOL to delete the reference to skill-levels in the prevailing wage formula no later than April 20, 2013. *See Comite de Apoyo a los Trabajadores Agricolas v. Solis*, 933 F. Supp.

2d 700, 716 (E.D. Pa. 2013), *rev'd on other grounds*, 774 F.3d 173 (3d Cir. 2014). DOL and DHS then jointly issued an interim final rule deleting the words "at the skill level" from DOL's formula. *See Wage Methodology for the Temporary Non-Agricultural Employment H-2B Program, Part 2, Interim Final Rule, Request For Comments*, 78 Fed. Reg. 24,047 (Apr. 24, 2013) ("2013 IFR"). The 2013 IFR was given immediate effect. *Id.* at 24,055.

To avoid imposing unforeseeable obligations retroactively, DOL had always applied changes to its regulations prospectively. Thus, employers that had relied in good faith on DOL's official PWD would not find themselves with a wholly new and unforeseen legal obligation. *See, e.g.*, *C & C Consulting Engineers*, 2008-INA-00035 and 2008-INA-00036 (Aug. 6, 2009). For the 2013 IFR, however, DOL announced that for all H-2B work after April 24, 2013, the prevailing wage would be set using the 2013 IFR formula, *i.e.*, the new totality-of-the-circumstances test rather than 2008's "skill-level" test. *See* 2013 IFR, 78 Fed. Reg. at 24,055. DOL stated the new wage rate would apply to prospective H-2B employers already 'in process' and already approved H-2B employers upon receipt of notice from DOL. *Id.*

However, the text of the 2008 H-2B Final Rule, as amended by the 2013 IFR, did not match DOL's stated intention. For instance, the 2008 H-2B Final Rule only provided for pre-certification PWDs and did not impose an obligation to pay the rate specified in a post-certification SPWD. *See* 20 C.F.R. § 655.10(d). Nor did the 2008 H-2B Final Rule provide an enforcement mechanism for SPWDs.

DOL began issuing SPWDs in May, 2013 through its Office of Foreign Labor Certification ("OFLC"). J.A. at 151-154. A subcomponent of OFLC, the National Prevailing Wage Center ("NPC"), issued the SPWDs. The SPWDs were issued by DOL's National Certifying Officer (the "CO"). J.A. at 152.

For present purposes, three characteristics of the SPWDs themselves are important. First, the SPWDs purported to revoke the final PWD that DOL had already issued and replace the final PWD with a new, usually higher, rate. J.A. at 96. Second, the SPWDs stated that an employer who believed the SPWDs did not conform with the 2008 H-2B Final Rule, as amended, could obtain review in accordance with 20 C.F.R. § 655.10(g). J.A. at 97. Finally, the SPWDs stated that

the new wage rate would not become effective until the employer lost its administrative challenge. J.A. at 98.

The purpose of DOL's review mechanism, broadly speaking, was to ensure that the CO complied with DOL's regulations. *See* 2011 Wage Rule, 76 Fed. Reg. at 3466 ("Employers may . . .request BALCA review when an employer disagrees with the Department's application of the prevailing wage determination process at 20 CFR 655.11(e).")

The first step in obtaining such a review was specified in 20 C.F.R. § 655.10(g)(1). Section 655.10(g)(1) authorized review (1) "if the employer disagrees with the wage level assigned to its job opportunity," (2) "if the NPC informs the employer its survey is not acceptable," or (3) "if there is another legitimate basis for such a review." When an employer sought review, § 655.10(g)(2) required the NPC to consider the employer's submission. However, § 655.10(g)(2) did not mandate that the NPC act in a particular time frame. Finally, § 655.10(g)(3) gave an employer three options if the the employer disagreed with the NPC's decision: (1) acquiesce in the NPC's decision; (2) file a new prevailing wage request; or (3) seek further review under 20 C.F.R. § 655.11.

The second step when reviewing PWDs was CO review. To obtain CO review, an employer had to file a request for such review with the NPC within ten (10) days of the NPC's decision under § 655.10(g)(3). *See* 20 C.F.R. § 655.11(a). The filing of a timely request for CO review under § 655.11(a) triggered a duty to review the request. *See* 20 C.F.R. § 655.11(b). Section 655.11(b), however, did not impose a duty on the CO to decide the question within a particular time frame. The CO was given authority to affirm or modify the PWD. *See* 20 C.F.R. § 655.11(d).

The last step in the process was review by DOL's Board of Alien Labor Certification Appeals ("BALCA"). *See* 20 C.F.R. §§ 11(e), § 655.33. Section 655.11(e) specifies the procedure for making a request and the time frame for doing so. Section 655.33 specified a procedure for handling appeals.

BALCA review was available under the 2008 H-2B Final Rule for PWD challenges and for denials of labor certifications. 20 C.F.R. §§ 655.11(e), § 655.33(a). BALCA review occurs on the record. The CO has the responsibility of compiling the record and submitting that to BALCA. Submission of the appeal file triggered a waivable 10-day deadline for decision. *See* 20 C.F.R. § 655.33(f).

### D. Island Holdings, LLC Challenges Three SPWDs And Prevails.

In May 2013, the CO issued three post-certification SPWDs to a company named Island Holdings, LLC.[3] Island Holdings sought timely NPC review under § 655.10(g). Island Holdings disagreed with the rate that the SPWDs assigned to its job opportunities (cooks, servers, and housekeeping staff) and offered additional bases for review. The NPC rejected Island Holdings' arguments. J.A. at 60-61. Island Holdings then appealed to BALCA, which initially dismissed Island Holdings' premature appeal for lack of jurisdiction. J.A. at 61. After remand, the CO, too, rejected Island Holdings' arguments. Island Holdings returned to BALCA, which accepted the appeal of the CO's decision. *Id.*

In view of the importance of the issues Island Holdings presented, the CO asked BALCA for *en banc* review, which was granted. J.A. at 53-54. BALCA set a briefing schedule and invited amicus participation. Two organizations responded. One, the Comite de Apoyo de Trabajadores Agricolas ("CATA"), submitted an *amicus* brief on behalf

---

[3] Island Holdings is not a party to this case.

of H-2B workers in support of the CO. Another, the Forest Resources Association, submitted an *amicus* brief in support of Island Holdings.

### E. BALCA Rules In Island Holdings' Favor.

BALCA issued its decision on December 3, 2013. *See* J.A. at 55-71. It held:

> Island argues the Department's regulations do not authorize the NPWC to increase the prevailing wage rate an employer must offer and pay to H-2B workers after the Department has approved and certified the employer's Application for Temporary Employment Certification. We agree.

*Id.* at 62. BALCA's holding was narrow. BALCA decided only that the 2008 H-2B Final Rule did not authorize DOL to revoke and replace a final PWD after DOL has approved the employer's labor certification.

BALCA began its analysis by agreeing with the CO that it had to apply the 2008 H-2B Rule as written and could neither add nor subtract from it. *See* J.A. at 62. BALCA then reviewed the 2008 H-2B Final Rule – as amended by the 2013 IFR – to see if it described the SPWDs and concluded that it did not. J.A. at 65. BALCA buttressed this conclusion by noting that any purported obligation to pay post-certification SPWDs was inconsistent with the 2008 H-2B Final Rule as a whole. J.A. at 62-65. Finally, BALCA considered and rejected the CO's invitation to

affirm for reasons not rooted in the regulatory text. J.A. at 65-68. BALCA concluded succinctly:

> The Department's H-2B regulations do not require an employer to increase the wage it offers and pays its H-2B workers after the Department has approved and certified its Application for Temporary Employment Certification. It was an abuse of discretion for the Certifying Officer to affirm the supplemental PWDs, which impose a legal obligation that is not otherwise required by law. We therefore REMAND the supplemental PWDs to the Certifying Officer with instructions to vacate the increased wage obligations that they purport to impose.

J.A. at 69. To date, the CO has not complied with this order.

### F. DOL Administers Other SPWD Challenges Consistently With 20 C.F.R. §§ 655.10 and 655.11.

While *Island Holdings* was being litigated, other employers sought review of their SPWDs in accordance with §§ 655.10 & § 655.11. The challenges were broadly similar, but often differed in the specific arguments presented. These challenges are awaiting decision under 20 C.F.R. §§ 655.10(g)(2) & (3) and 655.11(b). There is no deadline by which the NPC or the CO (as the case may be) must act.

### G. DOL Attempts To Reverse *Island Holdings* Through A Collusive Lawsuit In The Eastern District Of Pennsylvania And Is Rebuffed.

Within seven days of their loss before BALCA, DOL's amicus CATA sued DOL in the Eastern District of Pennsylvania. J.A. at 72. This was a classic friendly lawsuit. It was so friendly that when CATA moved for summary judgment demanding that *Island Holdings* be reversed, DOL urged the district court to enter judgment in CATA's favor. *See* J.A. at 74. The district court, however, was not fooled and dismissed the case on standing and ripeness grounds. *Comite de Apoyo a los Trabajadores Agricolas v. Perez*, 46 F. Supp. 2d 550, 560-61, 562-64 (E.D. Pa.), *rev'd*, 774 F.3d 173 (3d Cir. 2014).

### H. DOL Proposes A "Declaratory Order" Deeming Itself The Winner Of *Island Holdings*.

Having failed to obtain judicial relief, DOL's next gambit was to issue a Notice Of Intent To Issue Declaratory Order; Request For Comment on December 17, 2014. *See Intent To Issue Declaratory Order*, 79 Fed. Reg. 75,179 (Dec. 17, 2014). J.A. at 211. DOL proposed "issuing a declaratory order to overrule the BALCA's decision and legal conclusions in *Island Holdings* and to reaffirm the Secretary's interpretation of the regulations, as stated in the preamble to the IFR." *Id.* at 75,183. DOL accepted public comment on this proposal in late 2014 and early 2015.

### I. The United States District Court For The Northern District Of Florida Vacates And Permanently Enjoins DOL From Enforcing The 2008 H-2B Final Rule.

On March 4, 2015, the United States District Court for the Northern District of Florida vacated and enjoined further enforcement of DOL's 2008 H-2B Final Rule on March 4, 2015. It held, based on controlling Eleventh Circuit authority, that DOL did not have legislative rulemaking authority over the H-2B program. *See Perez v. Perez*, 2015 U.S. Dist. LEXIS 27606, at *13-14 (N.D. Fla. Mar. 4, 2015) ("The Department of Labor's Final Rule dated December 19, 2008, and published at 73 Fed. Reg. 78,020, is hereby VACATED and Defendants are permanently enjoined from enforcing it."); *see also Bayou Lawn & Landscape Servs. v. Oates*, 713 F.3d 1080, 1084 (11th Cir. 2013) ("DHS was given overall responsibility, including rulemaking authority, for the H-2B program. DOL was designated a consultant. It cannot bootstrap that supporting role into a co-equal one.")[4] DOL did not appeal the judgment in *Perez* and it is now final.

---

[4] Two other United States Courts of Appeal have spoken on related issues. The Third Circuit held that DHS could lawfully condition the issuance of an H-2B visa on receipt of a DOL labor certification. *See Louisiana Forestry Assn., Inc. v. Secretary of Labor*,

In response to the district court's decision in *Perez*, DOL and DHS jointly issued a new set of regulations on April 29, 2015. *See Temporary Non-Agricultural Employment of H-2B Aliens in the United States*, 80 Fed. Reg. 24,042 (Apr. 29, 2015) (Interim Final Rule; Request for Comments); *Wage Methodology for the Temporary Non-Agricultural Employment H-2B Program,* 80 Fed. Reg. 24,146 (Apr. 29, 2015) (Final Rule). The new regulations were given immediate effect.

### J. Appellants File This Lawsuit, Which Was Correctly Dismissed For Lack Of Subject Matter Jurisdiction And Failure To State A Claim.

On November 13, 2015, Employee-Appellants filed a four-count lawsuit against DOL. The Complaint also named Consolidated Employer-Appellees as defendants. The Complaint asserted three

---

745 F.3d 653, 673 (3d Cir. 2014) ("The DHS thus did not impermissibly subdelegate all of its authority in this area. Rather, the DHS *conditioned* its own granting of an H-2B petition on the DOL's grant of a temporary labor certification."). The Tenth Circuit determined that DHS could not redelegate rulemaking authority to DOL. *See G.H. Daniels III & Assocs., Inc. v. Perez*, 2015 U.S. App. Lexis 15689, at *17 (10th Cir. Sept. 3, 2015) ("Absent Congressional authorization, DHS's subdelegation [to DOL] in this case is improper."). Given that the *Perez* judgment that DOL lacks legislative rulemaking authority over the H-2B Program binds DOL and can be asserted in a proper proceeding, this issue is not presented here and need not be resolved.

causes of action against DOL under the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.*, and sought a declaratory judgment for back pay against DOL and Employer-Appellees. Each count was designed to compel DOL to force Employer-Appellees to pay a much higher wage to their former H-2B workers for work during the 2013 season.

All defendants (DOL and Employer-Defendants) separately moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim upon which relief could be granted). Plaintiff-Appellants opposed.

After briefing was substantially complete, Plaintiff-Appellants sought leave to add a new APA claim against DOL.

Employer-Appellees opposed this motion for two reasons. First, it was untimely. If permitted, the amendment would have generated another round of wasteful briefing of the issues that the parties had just finished briefing. Second, Employee-Appellants' motion would have been futile. Employer-Appellees pointed out that the proposed Count V would not cure the lack of subject matter jurisdiction and that dismissal would be required in any event.

For their part, Employee-Appellants responded by denying that their motion was untimely. As to subject matter jurisdiction, however, they appeared to recognize the futility of amending the Complaint when the district court lacked subject matter jurisdiction. So they suggested that the district court grant their motion and then dismiss for lack of subject matter jurisdiction if otherwise warranted.[5] *See* [DE 151] Plaintiffs' Reply Brief In Support Of Their Motion For Leave To File A First Amended Complaint, p. 2 ("allow the amendment and simply apply the arguments in their previously filed motion to dismiss all of the causes of action including the new claim.")

The District Court dismissed this case and denied leave to amend on June 17, 2016. *See* J.A. 164. The District Court dismissed Count I because there was no final agency action. DOL's alleged interpretation of 20 C.F.R. §§ 655.10(g), 655.11 and 655.33 did not "mark the consummation of the agency's decision making process and does not constitute an action by which rights or obligations have been determined." J.A. 165, n. 1 (internal quotations omitted).

---

[5] Employee-Appellants, of course, had argued that dismissal was not warranted.

The district court dismissed Count II because Employee-Appellants lacked standing. Employee-Appellants were not parties to the *Island Holdings* litigation so the *Island Holdings* decision itself did not injure them but, rather, other independent DOL actions. *See id.* ("This constitutes an 'independent action' which prevents the injury claimed by Employee-Appellants from being 'fairly traceable' to the BALCO [*sic.*] decision. *See Lujan* v. *Defenders of Wildlife,* 504 US 555, 561 (1992).")

The Court dismissed Count III because DOL had no duty to issue a declaratory order ever and so could not unreasonably delay its issuance. J.A. 165, n. 1 ("Appellants' claim that the Department unreasonably delayed issuing its Declaratory Order also fails. There is no requirement that the Department issue the Order and that is fatal to the claim.") Employee-Appellants have not appealed the decision to dismiss Count III. *See* Employee-Appellants' Brief, p. 19 n. 6.[6]

---

[6] Appellants' waiver is ambiguous. Their brief states that "Count III is subsumed" in proposed Count V. *See* Employee-Appellants' Brief, p. 19 n. 6. This is insufficient to preserve an appeal of Count III. First, the issue with respect to proposed Count V is whether the motion for leave to amend should have been granted, not whether Count III was properly dismissed. Second, Employee-Appellants did not brief a

The district court dismissed Count IV because there was no "actual controversy" between Employee-Appellants and DOL. The Court explained: "Here, there is no actual controversy between plaintiffs and the Department because the Department has stated that it agrees with plaintiffs' position on SPWD wages, contrary to the position taken by the BALCA." J.A. 165, n. 1. The district court denied Employee-Appellants' Motion for Leave to Amend because it lacked subject matter jurisdiction (futility)[7] and the motion was untimely. *See* J.A. 180.

This appeal followed.

## SUMMARY OF THE ARGUMENT

The district court correctly dismissed this action and its action should be affirmed. Employee-Appellants have chosen not to appeal the

---

challenge to the district court's decision. Failure to brief an issue waives it. *Russell v. Absolute Collection Servs.*, 763 F.3d 385, 396 n.* (4th Cir. 2014) ("Absolute Collection's opening brief does not contain any legal argument as to how the evidence Absolute Collection submitted at trial could support a valid bona-fide-error defense, nor does it include any record citations or pertinent legal authority supporting such a claim. We deem this perfunctory and undeveloped claim waived.").

[7] The district court did not use the word "futile" in its decision. However, a denial of a motion for leave to amend on grounds of lack of subject matter jurisdiction is viewed as a dismissal on grounds of futility. *See United States ex rel. Ahumada v. NISH*, 756 F.3d 268, 279 (4th Cir. 2014).

dismissal of three of their four counts. The district court should be affirmed as to those counts for that reason alone.

For a dispute to fall within the "judicial power of the United States," the party invoking federal jurisdiction must show that the dispute meets several prerequisites. First, he/she must show he/she has constitutional standing to sue each particular defendant for each type of requested relief. *See DaimlerChrysler Corp. v Cuno*, 547 U.S. 332, 342 (2006) ("The requisite elements of this core component derived directly from the Constitution are familiar: A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.") (citation and internal quotation marks omitted).

Second, he/she must show that the dispute is appropriate for judicial resolution. "[A] party may have standing in a particular case, but the federal court may nevertheless decline to pass on the merits of the case because, for example, it presents a political question." *See Flast v. Cohen*, 392 U.S. 83, 100 (1968). A matter does not fall within the judicial power of the United States if the parties seek adjudication of a political question, when they seek an advisory opinion, when their

dispute has been mooted, where the suit is collusive or "friendly," and where the plaintiff lacks standing to seek particular relief against a particular defendant. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("Laidlaw is right to insist that a plaintiff must demonstrate standing separately for each form of relief sought."); *Flast,* 392 U.S. at 95 (political question, mootness, lack of standing); *id* at 100; *United States v. Johnson*, 319 U.S. 302, 305 (1943) (friendly/collusive lawsuits).

These settled rules fully support the district court's dismissal of the Complaint. First, any judgment that the district court might have entered resolving the dispute between DOL and Employee-Appellants would not bind any of the Consolidated Employer Appellees. Employee-Appellants have not, and cannot, plead a claim against any Consolidated Employer Defendant. The only cause of action that mentioned Consolidated Employer Appellees was Count IV, but the district court dismissed that claim and Employee-Appellants chose not to appeal that decision. This Court's decision in *Comite de Apoyo a Los Trabajadores Agricolas v. United States Dep't of Labor*, 995 F.2d 510

(4th Cir. 1993) ("*CATA*"), requires dismissal lest the district court issue a prohibited advisory opinion.

Second, Employee-Appellants lack standing to press Count I (or proposed Count V) against DOL because neither this Court nor the district court can provide them any effectual relief. Relief hinges on enforcement of the SPWDs and, by the final judgment of the United States District Court for the Northern District of Florida, all such enforcement has been permanently enjoined. A decision from this Court or the district court in Employee-Appellants' favor would be no more binding on the Northern District of Florida than this Court's decree bound the arbitrator in *CATA*. Whether Employee-Appellants obtain any relief depends on the Northern District of Florida, not the District of Maryland or the Fourth Circuit.

The district court's denial of leave to amend was plainly correct. For all of the reasons discussed above, the district court lacked subject matter jurisdiction. The proposed Count V would not have cured this defect. Therefore, the proposed amendment was futile and properly denied. *See United States ex rel. Ahumada v. NISH*, 756 F.3d 268, 279 (4th Cir. 2014).

# ARGUMENT

## A. Standard of Review

The district court's decision to dismiss the Complaint and to deny leave to amend on the basis of futility is reviewed *de novo*. *United States ex rel. Ahumada v. NISH*, 756 F.3d 268, 279 (4th Cir. 2014).

The dismissal of Counts II, III, and IV are not reviewable because Employee-Appellants did not appeal them. *See* Employee-Appellants' Brief, p. 19 n. 6.[8]

## B. The District Court Correctly Dismissed The Complaint For Lack Of Subject Matter Jurisdiction.

### 1. The District Court Lacked Constitutional Subject Matter Jurisdiction Over The Complaint.

---

[8] *United States v. McDonnell*, 792 F.3d 478, 503-04 (4th Cir. 2015) ("To avoid waiver, a party must brief the issue in an appeal over which we may exercise jurisdiction. Thus, because Appellant fails to sufficiently raise this issue and has, therefore, effectively waived it, we do not further address it."), *vacated and remanded on other grnds*, *McDonnell v. United States*, 136 S. Ct. 2355 (2016); *Russell v. Absolute Collection Servs.*, 763 F.3d 385, 396 n.* (4th Cir. 2014) ("Absolute Collection's opening brief does not contain any legal argument as to how the evidence Absolute Collection submitted at trial could support a valid bona-fide-error defense, nor does it include any record citations or pertinent legal authority supporting such a claim. We deem this perfunctory and undeveloped claim waived.")

Federal courts are courts of limited jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). As such, they may "hear only those cases that (1) are within the judicial power of the United States, as defined in the Constitution, and (2) that have been entrusted to them by a jurisdictional grant by Congress." 13 Wright & Miller, *Federal Practice and Procedure* § 3522, at 100. Employee-Appellants bear the burden of proof on this issue and must overcome a presumption against federal jurisdiction. *See Roche v. Lincoln Prop. Co.*, 373 F.3d 610, 616 n.9 (4th Cir. 2004) ("Because federal courts are courts of limited jurisdiction, there is a presumption against its existence, and the party invoking federal jurisdiction bears the burden of proof when diversity is challenged."), *rev'd on other grnds*, *Lincoln Prop. Co. v. Roche*, 546 U.S. 81 (2005).

Article III, § 2 defines the full extent of the judicial power of the United States. *See* U.S. Const., Art. III, § 2. To fall within the judicial power of the United States, a dispute must have proper parties (standing, no friendly lawsuits) and must not be moot, present a political question, or seek an advisory opinion. As the Supreme Court summarized:

> No justiciable controversy is presented when the parties seek adjudication of only a political question, when the parties are asking for an advisory opinion, when the question sought to be adjudicated has been mooted by subsequent developments, and when there is no standing to maintain the action.

*Flast v. Cohen*, 392 U.S. 83, 95 (1968); *id.* at 100 (federal courts may not "entertain friendly suits . . . , or those which are feigned or collusive in nature.") (internal quotation marks omitted).

This case may be unique in that the dispute presented in the Complaint violates each of these rules, save the political question doctrine (which is wholly inapplicable). Employee-Appellants seek a prohibited advisory opinion. *See Comite de Apoyo a Los Trabajadores Agricolas v. United States Dep't of Labor*, 995 F.2d 510 (4th Cir. 1993) ("*CATA*"). The *Perez* injunction and *vacatur* effectively moot all legal issues relating to DOL's SPWDs. Employee-Appellants lack standing to sue DOL or Employer-Appellees as to Counts I and proposed Count V because this Court cannot effectually grant relief with the *Perez* judgment in place.

**2. *Comite de Apoyo a Los Trabajadores Agricolas v. United States Dep't of Labor*, 995 F.2d 510 (4th Cir. 1993) ("*CATA*") Forbids The District Court From Issuing Employee-Appellants' Requested Advisory Opinion.**

Article III forbids federal courts from entering advisory opinions. *See Flast,* 392 U.S. at 95; *CATA*, 995 F.2d at 511 ("Article III forbids [federal courts] to enter such an [advisory] judgment.") In *CATA*, the Court held that in a lawsuit seeking a judgment against the government that would, as a practical matter, result in affirmative relief against a third party is advisory unless the third party is also bound by that judgment. *See CATA*, 995 F.2d at 511 ("We hold that Employee-Appellants do not have standing, because the grower would not be bound by a judgment rendered in its absence.") In other words, *CATA* requires at least two "Cases or Controversies" – one between Employee-Appellants and all Consolidated Employer Appellees and one between Employee-Appellants and DOL – before the exercise of subject matter jurisdiction is authorized.

*CATA* shows how this rule is to be applied. In *CATA*, a group of agricultural workers sued their employers. *CATA*, 995 F.2d at 512. The workers claimed that DOL erroneously set the wage rate the employers had to pay their nonimmigrant agricultural workers. By the time the case arrived at the Court of Appeals, the dispute between the employers

and the workers had been presented to an arbitrator pursuant to contract.

This Court dismissed the agricultural workers' appeal because the absence of the workers' employers meant that any opinion this Court issued would be an advisory opinion since it would not bind the employers. *Id.* at 511. The fact that a decision from this Court would have been persuasive to the arbitrator and might have had precedential effect in a later dispute was insufficient to avoid the prohibition against advisory opinions. An opinion would be advisory unless the judgment bound the workers' employers.

This case is the same as *CATA* in all relevant respects. Like the workers in *CATA*, Employee-Appellants sued DOL challenging DOL's wage-setting formula and challenging the administrative process by which DOL determines each individual employer's prevailing wage. Employee-Appellants hope to transmute a decision in their favor on their claims against DOL to a direct, liquidated legal obligation on Consolidated Employer-Appellees to pay back wages calculated using their preferred formula within thirty (30) days of judgment. *See* J.A. 051, Prayer for Relief, ¶ (f). It follows that, under CATA, Employee-

Appellants must establish that the district court can enter a binding judgment against Employee-Appellees. If they cannot, *CATA* requires dismissal.

**3. The District Court Lacks The Authority To Enter A Binding Judgment Against Employer-Appellees.**

Employee-Appellants admit that they did not plead an Article III "Case or Controversy" against Consolidated Employer-Appelless. *See See* [DE 141] Appellants' Memorandum Of Law In Opposition To Employer-Defendants' Motion To Dismiss, pp. 9 ("As noted above, Appellants do not need to plead a case or controversy against any of the Employer-Appellees to join them as Rule 19 parties."); 10 ("Again, Defendants are Rule 19 parties and Appellants need not allege injury-in-fact or any other standing element against the Employers."). Because Article III requires the party invoking federal jurisdiction to allege and later prove the existence of a Case or Controversy, this concession provides a sufficient reason under *CATA* to dismiss. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("The party invoking federal jurisdiction bears the burden of establishing these elements.")

Rather than shouldering their burden under Article III, Employee-Appellants previously invoked a Federal Rule of Civil Procedure and a pre-*Cuno* Ninth Circuit opinion purportedly excusing them from alleging and proving the existence of subject matter jurisdiction against Consolidated Employer Appellees.

The Ninth Circuit case rests on the premise that subject matter jurisdiction over one defendant is sufficient for a federal court to exercise subject matter jurisdiction over another person named as a defendant, even if that party would not otherwise be within the court's subject matter jurisdiction. *See EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 782 (9th Cir. 2005).

The Supreme Court rejected this idea in *Cuno*. *Cuno* presented a commerce clause challenge to a state franchise tax credit. *Cuno*, 574 U.S. at 350. The plaintiffs had standing to challenge a municipal property tax credit exemption, *id.* at 351, and sought to leverage that standing into standing to challenge the separate franchise tax credit. *Id.* The Supreme Court rejected this gambit. *See Cuno*, 547 U.S. at 352-53 ("Plaintiffs failed to establish Article III injury with respect to their *state* taxes, and even if they did do so with respect to their *municipal*

taxes, that injury does not entitle them to seek a remedy as to the state taxes.") In other words, standing is dispensed claim by claim, not "in gross." *Id. Peabody*'s assumption that derivative subject matter jurisdiction was permissible under Article III is no longer tenable.

Even if *Cuno* did not otherwise require rejection of Employee-Appellants' *Peabody*/Rule 19 theory, *Peabody* is also inconsistent with this Court's consistent jurisprudence that the Federal Rules of Civil Procedure do not expand federal court jurisdiction. *See Bernard v. U. S. Lines, Inc.*, 475 F.2d 1134, 1136 (4th Cir. 1973) ("Rule 82 expressly negates the extension of jurisdiction by the rules."); *Kenrose Mfg. Co. v. Fred Whitaker Co.*, 512 F.2d 890, 893 (4th Cir. 1972) ("By express provision the rules are not to be read as a source of jurisdiction.") Whatever the rule may be in the Ninth Circuit, Rule 19 does not empower the district court to enter a binding judgment against any Consolidated Employer-Defendant.

Moreover, the basic requirements of Rule 19 have not been satisfied. Rule 19 requires the joining party to state a claim against the joined party if affirmative relief is at issue. *See Davenport v. Int'l Bhd. of Teamsters*, 166 F.3d 356, 366 (D.C. Cir. 1999) ("But while Rule 19

provides for joinder of necessary parties, it does not create a cause of action against them."); *Vieux Carre Prop. Owners, Residents & Assocs. v. Brown*, 875 F.2d 453, 457 (5th Cir. 1989) ("[I]t is implicit in Rule 19(a) itself that before a party . . . will be joined as a defendant the plaintiff must have a cause of action against it."). Even *Peabody* agrees. *Peabody*, 400 F.3d at 782 (Rule 19 may be used to join a necessary party against whom plaintiff lacks a cause of action when plaintiff seek no affirmative relief against potential joined defendant). Here, Employee-Appellants' are seeking a money judgment against consolidated employer-appellees, J.A. 051, Prayer for Relief, ¶ (f), which is quintessentially affirmative relief even under the *Peabody* doctrine.

#### 4. *CATA* Requires Dismissal.

This Court can and should affirm the district court's dismissal on the basis of *CATA* alone. Combined with the Supreme Court's decision in *Cuno*, *CATA* requires Employee-Appellants to plead a "Case or Controversy" sufficient to impose a binding judgment against each Consolidated Employer Appellee. *See Cuno*, 547 U.S. at 342. They candidly admit that they have not done so and *Cuno* forecloses their argument for being excused from the Case or Controversy requirement

under the Ninth Circuit's decision in *Peabody*. Even if Rule 19 provided a way to avoid satisfying *Cuno*, it is inapplicable in the absence of a cause of action against individual employers. Any judgment that this Court (or the district court) might enter in this case would amount to an advisory opinion. This case therefore should be dismissed.

### C. Employee-Appellants Lack Standing To Sue DOL Under Count I And Proposed Count V.

Article III, § 2 requires Employee-Appellants have standing to sue DOL. They do not. To have standing, Employee-Appellants bear the burden of showing that they experienced an injury fairly traceable to a particular defendant's unlawful action and that that injury would be redressed by an order of the Court. *See Cuno,* 547 U.S. at 342.

Appellants lack standing to pursue either Count I or the proposed Count V against DOL. Count I claims that DOL injured Employee-Appellants by allowing their employer, Employer-Appellee Outside Unlimited, to seek review of the SPWD wage that DOL tried to impose. Employee-Appellants suggest that DOL misinterpreted the 2008 H-2B Final Rule to allow "legal challenges" to the SPWD policy. The reason that "legal challenges" cannot be appealed, according to Employee-Appellants, is that BALCA allegedly cannot decide them. Employee-

Appellants then complain that the SPWD wage obligation would have arisen but for the presence of this "legal challenge."

Appellants' argument should be rejected for several reasons. First, Employer-Appellee Outside Unlimited's challenge contained two independent arguments – one a claim that the 2008 H-2B Final Rule did not impose an obligation to pay the SPWD wage rate and a factual challenge to DOL's application of its prevailing wage formula. Even if the NPC and the CO had interpreted 20 C.F.R. §§ 655.10(g), 655.11, and 655.33 just as Employee-Appellants desire, their employer would have a challenge to its SPWD pending. Thus, Employee-Appellants' injury is not traceable to DOL's alleged misinterpretation of its own regulations.

Second, the NPC and the CO correctly interpreted the regulations in question. Under § 655.10(g)(1), an employer can seek review based on a mere disagreement with the assigned prevailing wage or any other "legitimate" basis. If the employer seeks further review after that, the regulations require only that it meet certain timeliness and processing requirements. *See* 20 C.F.R. §§ 655.11(a), (c), (d), (e); 655.33(a). These regulations do not permit the NPC or the CO or BALCA to refuse to

process a request for review based on the substance of the employer's argument.

Finally, Employee-Appellants' claim that BALCA may not review a "legal challenge" to the NPC's or CO's actions is overbroad and tendentious. BALCA's role is to ensure CO compliance with the regulations. *See* 2011 Wage Rule, 76 Fed. Reg. at 3466. To this end, BALCA was given authority to review the CO's decisions. *See* 20 C.F.R. § 655.33. BALCA necessarily must have authority to review legal challenges that claim the CO's actions were contrary to, or unauthorized by, the regulations governing his or her conduct, *i.e.*, BALCA determines whether there are any regulations with which to comply. Thus, Employee-Appellants' broad assertion that BALCA has no jurisdiction to hear a legal challenge is contradicted by the very regulations that they are otherwise seeking to enforce.[9] Employee-

---

[9] BALCA may not rule on a challenge to the validity *vel non* of a regulation, but it may rule on what the regulations require. Despite Employee-Appellants' intimations to the contrary, the CO argued expressly that this rule required BALCA to dismiss *Island Holdings*. The CO wrote that BALCA "lacks both the inherent authority to rule on the validity of a regulation and the express authority to invalidate the regulation as written.' Certifying Officer's Brief on Remand Concerning the Issuance of Island Holdings Supplemental Prevailing Wage

Appellants have not shown the CO's alleged misinterpretation caused them a legally cognizable injury. They therefore lack standing to sue DOL with respect to Count I of the Complaint.

Appellants also lack standing to press proposed Count V. The essential allegation of proposed Count V is that DOL has a duty to process SPWD challenges within specific deadlines. To support this, Employee-Appellants cite 20 C.F.R. § 655.33 relating to BALCA review. However, all Employer-Appellees' challenges are pending before either the NPC or the CO and no deadlines exist for the processing of these appeals. DOL has not injured Employee-Appellants by operating in accordance with the regulations.

Nor can Employee-Appellants show that an order from this Court providing Employee-Appellants the relief they seek – ordering DOL to begin enforcement of the SPWDs by processing SPWD challenges (*see* J.A. at 51 (prayer for relief) – would redress the alleged injury. The reason is that DOL is bound by the final judgment in *Perez* not to

---

Determinations ("CO's Brief"), at 5-6[.]" *See* J.A. at 61-62. BALCA agreed with this proposition, but could not find any provision of the 2008 H-2B Final Rule that would be invalidated by ruling in favor of Island Holdings. J.A. at 62.

enforce the 2008 H-2B Final Rule, nor may DOL act upon the now-vacated regulations.[10] Employee-Appellants thus lack standing because they have not shown that the alleged wrong can be redressed by an order of this Court.

### D. The District Court Correctly Dismissed Count I Of The Complaint.

The District Court correctly dismissed Count I of the Complaint as there is no final agency action. Initially, the district court correctly held that there is no agency "action" to review. *See* J.A. 165. Employee-Appellants appear to find this agency action in the litigation position the Certifying Officer took in the *Island Holdings* litigation and the Certifying Officer's decision to process SPWD challenges administratively. *See* Employee-Appellants' Brief, p. 24 ("[t]he Secretary has taken the position that those regulations [20 C.F.R. §§ 655.10(g), 655.11, & 655.33] may be used by employers to challenge the

---

[10] Undoubtedly, Employee-Appellants will assert in their reply brief that DOL can enforce the 2008 H-2B Final Rule. However, Employee-Appellants have the burden to prove their standing, and they waived any argument regarding the enforceability of the 2008 H-2B Final Rule by failing to raise it in their opening brief. Moreover, because any interpretation by this Court of the *Perez* final judgment would not bind the Northern District of Florida or the Eleventh Circuit, any such interpretation would be a prohibited advisory opinion.

Secretary's legal authority to issue SPWD notices.") But DOL's litigating position was the opposite of what Employee-Appellants describe. DOL claimed at every level that Island Holdings could not challenge "the Secretary's legal authority to issue SPWD notices." The Certifying Officer was quite explicit about this in the *Island Holdings* litigation:

> In making this argument, Counsel [for the CO] relies on this Board's holding in *Dearborn Public Schools*, that it "lacks both the inherent authority to rule on the validity of a regulation and the express authority to invalidate the regulation as written."

*See* J.A. 61-62. BALCA agreed with the CO on this point. *Id.* ("Our review is limited to whether the regulations, as codified at Title 20, Part 655, Subpart A of the Code of Federal Regulations, permit the NPWC to issue the supplemental PWDs at issue in this appeal.") That is why Island Holdings based its challenge on the fact that DOL *failed to codify* an obligation to pay the SPWD wage in the regulations.

To the extent that Employee-Appellants are arguing that the Certifying Officer should not have read 20 C.F.R. §§ 655.10(g), 655.11, & 655.33 to prohibit any challenge at all, their real complaint is that the Certifying Officer's lawyers did not present that argument to

BALCA. Such day-to-day operational decisions do not constitute final agency action under *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). The district court correctly dismissed Employee-Appellants' challenge in Count I of the Complaint to a non-existent agency "action."

Finally, the APA simply does not permit Employee-Appellants to challenge the timing of DOL's review. The APA only permits review of discrete agency action that is required by law. *Norton*, 542 U.S. at 65 ("The limitation to *required* agency action rules out judicial direction of even discrete agency action that is not demanded by law (which includes, of course, agency regulations that have the force of law"). Nothing in the applicable regulations *requires* agency action within a specific time. Employee-Appellants cannot challenge the timeliness of DOL's review based on 5 U.S.C. § 706(1).

### E. The District Court Did Not Abuse Its Discretion In Denying Employee-Appellants' Motion For Leave To Amend.

The district court did not abuse its discretion in denying Employee-Appellants' Motion for Leave to Amend. Employee-Appellants' motion asked for leave to file a First Amended Complaint adding a new count against DOL alone under the APA. *See* J.A. at 113,

138. Count V claimed that DOL owed them a mandatory legal duty to decide the SPWD challenges and had unreasonably delayed in doing so. Because nothing in the proposed Count V would have cured the lack of constitutional subject matter jurisdiction, the proposed amendment was futile.

A district court properly denies leave to amend a complaint for lack of subject matter jurisdiction on the grounds of futility. *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) ("[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or [the amendment] would be futile.") If the district court would lack subject matter jurisdiction over the amended complaint, it is proper to deny leave to amend on the grounds of futility. *See United States ex rel. Ahumada v. NISH*, 756 F.3d 268, 279 (4th Cir. 2014) ("To summarize, we hold that the public-disclosure bar deprives the district court of jurisdiction over Ahumada's claims against NISH, Green Bay, IPC, and Smurfit. With respect to those defendants, the district court correctly determined that

Ahumada's proposed amendments to his first amended complaint were futile.")

Appellants' proposed Count V would have done nothing to cure the district court's lack of subject matter jurisdiction. Because it was directed solely against DOL, Count V did not provide a basis for entering a binding judgment against the Employer-Appellees – a prerequisite for subject matter jurisdiction. *See CATA*, 995 F.2d at 511. The jurisdictional defect that existed under *CATA* before amendment would have existed under *CATA* after amendment. The proposed amendment was therefore futile and the district court properly denied it. Count V would have done nothing to cure this fatal problem with the exercise of subject matter jurisdiction in this case.

## CONCLUSION

This Court should affirm the district court's decision or, in the alternative, remand with instructions to dismiss for lack of subject matter jurisdiction.

Dated: May 31, 2017 Respectfully submitted,

R Wayne Pierce

________________________________

R. Wayne Pierce, Esquire
The Pierce Law Firm, LLC
133 Defense Hwy, Suite 201
Annapolis, Maryland 21401-7015
410-573-9955
Fax 410-573-9956
wpierce@adventurelaw.com

/s/ Wendel Hall

Wendel V. Hall, D.C. Bar 439344
Motion to admit to be filed
Hall Law Office, PLLC
1200 G Street, N.W.
Suite 800
Washington, D.C. 20005
(202) 661-2173 (phone)
(202) 434-8707 (facsimile)
wendel@halllawoffice.net

Attorneys for 65 Employer-Defendants
A of R Services, Inc.,
A.R. Star Services, Inc.,
Akehurst Landscape Service, Inc.,
Alpha Landscape Contractors, Inc.,
Bob Jackson Landscapes, Inc.,
Cedar Ridge Landscape, Inc.,
Challenger Sports Corp.,
Clipper's Inc.,
Clipper's Inc.-NOVA,
Columbia Grounds Management Corp.,
Continental Landscaping, Inc.,
Creative Landscapes by Gregory, Inc.,
C.S. Lawn & Landscape, Inc.
Custom Ground Maintenance, Inc.,

Denison Landscaping, Inc.,
Easton Ice Company, Inc.,
Ed's Plant World, Inc.,
Excell Lawn Care Inc.,
Exec-U-Lawn Landscape
Management, Inc.,
Facility Services Co., Inc.,
Fairplay Games, Inc.,
Frank Joseph & Sons, Inc.,
Gibson Landscapes Inc.,
Goshen Enterprises, Inc.,
Green Angels Landscaping LLC,
Grounds Management and
Landscaping Inc.
Hartsoe Property Services, LLC,
HV, LLC
Hydro-Tech Irrigation Co.,
Inners Amusement Co.,
Ivy Hill Nursery Co., Inc.,
Kane Landscapes, Inc.,
KCS Landscape Management, Inc.,
Kelly-Miller Bros. Circus,
Kingsdene Nurseries, Inc.
Landcare USA LLC,
Landscape Development Co., Inc.,
Larson's Tree Service & Landscaping,
Ltd.,
Lawns Unlimited, LLC,
Laytonsville Turf Farm, LLC,
Lee's Lawn Service,
Manor View Farm, Inc.,
Maryland Natives Nursery, Inc.,
Mead Tree & Turf Care, Inc.,
M.J.M. Lawn and Landscaping, Inc.,
Oak Hill Lawn Care & Landscaping,
Inc.,
Outside Unlimited, Inc.,
P. Stadler and Sons Co.,

Paul Schwartz Landscaping, LLC,
PGC Landscape LLC,
Pinehurst Landscape Co., Inc.,
Poole Landscaping, Inc.,
Porter Landscaping, Inc.,
Quality One, Inc.,
South Forty, Inc.,
Sposato Landscape Co., Inc.,
Strates Fine Foods, Inc.,
Surrounds Inc.,
TDH Landscaping, LLC,
Terrace Turf Lawn Services, Inc.,
Wentworth Nursery, Inc.,
W.H. Boyer, Inc.
Whatever Enterprises, LLC,
William T. King, Inc., and
Woodfield Landscaping Inc.

/s/ George E. Brown

George E. Brown
Kramon & Graham, PA
One cell Street, Suite 2600
Baltimore, Maryland 21202
410-752-6030
GBrown@kg-law.com
Attorney for Toll Landscape, L.L.C.
(Consent based upon 4th Cir. L.R. 25(a)(9))

/s/ T.W. Anderson, Jr.

T.W. Anderson, Jr.
Gray Robinson
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida 33131
305-416-6880
Terrance.Anderson@gray-robinson.com

Attorney for Deggeller Attractions, Inc.
(Consent based upon 4th Cir. L.R. 25(a)(9))

## CERTIFICATE OF WORD COUNT

This brief complies with the type-volume limitation of Fed. R. App. Proc. 32 (a) (7) (B) and 4th Cir. L.R. 29.1 because the word-count feature in Word 97-2003 indicates that this brief contains **8289** words, excluding the parts of the brief exempted by Fed. R. App. Proc. 32 (a) (7) (B) (iii).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 31, 2017, this Brief of Consolidated Employer-Appellees was served electronically by the Court's CM/ECF system on all counsel of record, each of whom is a filing user. Pursuant to 4th Cir. L.R. 25 (a) (1) (B) and (D), 30 (b) (4), and 31 (d), a hard copy of this brief will be mailed to the Clerk only on June 1, 2017.

R Wayne Pierce
R. Wayne Pierce